Amos Jodet STEVENSON, Appellant,

v.

The STATE of Texas, State.

No. 2–96–451–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 29, 1998.

Discretionary Review Refused
June 10, 1998.

David A. Pearson, IV, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Michael R. Casillas, Karen Lynn, Sean Colston, Asst. Dist. Attys., Fort Worth, for appellee.

Before JOHN G. HILL, J. (Sitting by Assignment), LIVINGSTON and BRIGHAM, JJ.

## OPINION

PER CURIAM.

Amos Jodet Stevenson, also known as Amos Joe Stevenson, appeals from his conviction by a jury of the offense of attempted murder. The jury assessed his punishment at eighteen years in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine. In four points he contends that the trial court erred by: (1) admitting an unadjudicated criminal act in the punishment phase that the State did not prove beyond a reasonable doubt as required by

Article 37.07, section 3(a) of the Texas Code of Criminal Procedure; (2) admitting gang-affiliation evidence at punishment where the State failed to produce a witness who had personal knowledge that Stevenson was an actual gang member; (3) refusing his request for a jury instruction on the absence of voluntary conduct; and (4) overruling his objection that testimony at punishment describing his tattoo was not a proper method of proving character. We affirm.

On the occasion in question, Stevenson fired a rifle several times at Kathy Riser, his friend's girlfriend, striking her in the back. She had previously accused him of molesting her daughter.

Stevenson urges in point one that the trial court erred by admitting an unadjudicated criminal act in the punishment phase that the State did not prove beyond a reasonable doubt as required by article 37.07, section 3(a) of the Texas Code of Criminal Procedure.

■ An eight-year-old child, who indicated that she was Stevenson's daughter, testified at the punishment phase of the trial that prior to the commission of the offense, he and she rode around Fort Worth in a car. According to the child, while she and Stevenson were riding around, Stevenson was hitting telephone poles; pointing his rifle at people while saying, "What's up, cuz?"; and throwing Crip signs. She was unable to testify as to what county this occurred in. Another witness testified that Fort Worth is in Tarrant County. We take judicial notice that Fort Worth is the county seat of Tarrant County. *See Black v. State*, 645 S.W.2d 789, 791 (Tex.Crim.App.1983).

Article 37.07, section 3(a) of the Texas Code of Criminal Procedure provides that, at the punishment phase of the trial the State may present evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could have been criminally responsible. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998).

■ Stevenson does not dispute that the child's testimony showed extraneous crimes

or bad acts committed by him for which he could have been criminally responsible. He urges that the State did not prove them beyond a reasonable doubt because there was no testimony as to the county in which they were committed. The purpose of article 37.07, section 3(a) is to allow the jury to consider such actions committed by the defendant in determining punishment. For that purpose, it makes no difference where the offense was committed. Presumably, the jury could consider such conduct on the part of the defendant if committed anywhere in the world, so long as it was a crime in that location. We conclude that section 3(a) does not require a showing of the county where the extraneous crimes or bad acts occurred.

■ Stevenson argues that proof of the county where the extraneous offense or bad act occurred is inferentially required by the notice provision contained in article 37.07, section 3(g) of the Texas Code of Criminal Procedure. That section provides that on timely request by the defendant, the State must give notice of its intent to introduce evidence under the article. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp.1998). The section further provides that if the notice is of an extraneous offense or bad act that has not resulted in a final conviction, it is reasonable only if it includes the date on which the offense occurred, the county in which it occurred, and the name of the alleged victim. *See id.* We interpret the purpose of this provision to be to give notice to the defendant concerning precisely what extraneous offense or bad act the State intends to introduce, not to establish a standard of proof for the bad act. Failure to prove the county indicated in the notice could be considered should there be a contention that the State's notice was not reasonable.

While not clear in the record, there is some indication that Stevenson received such a notice from the State. He made no contention at trial nor does he make any contention here that any notice he received from the State was not a reasonable notice.

■ If the State were required by article 37.07, section 3(g) to prove the county where the extraneous offenses or bad acts occurred, there still is no error because the evidence is sufficient, whether gauged in terms of beyond a reasonable doubt or by a preponderance of the evidence, to show that the extraneous offenses or bad acts occurred in Tarrant County.

Stevenson's contention that the evidence is insufficient to show the county where the offenses or acts occurred is based upon the fact that the child witness could not state the county in which they occurred. As previously noted, however, she did testify that the offenses occurred in Fort Worth and we have taken judicial notice that Fort Worth is in Tarrant County. We overrule point one.

Stevenson urges in point two that the trial court erred by admitting gang-affiliation evidence at punishment where the State failed to produce a witness who had personal knowledge that he was a gang member.

■ Evidence of a defendant's membership or association with a gang and the gang's character and reputation are admissible at the punishment phase of trial. *See Jones v.* State, 944 S.W.2d 642, 652–53 (Tex. Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Beasley v. State,* 902 S.W.2d 452, 457 (Tex.Crim. App.1995). Because the evidence of which Stevenson complains is of that character, we hold that the trial court did not err in admitting such evidence.

Stevenson contends that the evidence was not admissible because the officer did not have personal knowledge of whether he was a member of any gang, much less the Crips gang. Stevenson relies upon the cases of *Beasley,* 902 S.W.2d at 452; *Anderson v. State,* 901 S.W.2d 946 (Tex.Crim.App.1995); and *Fuller v. State,* 829 S.W.2d 191 (Tex. Crim.App.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

The Court in *Beasley* held that in order to present testimony of gang reputation there must be evidence of the defendant's gang membership. *Beasley,* 902 S.W.2d at 457. Stevenson's assertion that the evidence is not sufficient because the police officer who testified could not testify that he was a Crips member or a gang member of any kind is not a correct assertion in light of the other evi-

dence that was presented concerning Stevenson's conformity with the practices of the Crips gang. In *Beasley*, gang membership was established by the defendant's wearing of gang colors and his association with gang members, not by a witness testifying that he or she knew that the defendant was in a gang. *Id.* at 454. In *Anderson*, a police officer testified that he knew the defendant was a gang member because he was in the company of gang members and wore a gang tee shirt. *Anderson*, 901 S.W.2d at 948. Finally, in *Fuller*, the State produced virtually no evidence from which a rational juror could determine that the defendant was a member of the gang in question. *Fuller*, 829 S.W.2d at 198.

The State was allowed to present testimony from the child witness including the testimony that just before the shooting, Stevenson was pointing a rifle at people and saying, "What's up, cuz?", and was throwing Crip signs. A police officer testified that he had studied gangs and had previously testified as an expert in that field. He testified that Stevenson had a tattoo that stated "bitch killa." He said that the tattoo had significance related to gang activity, specifically that it refers to Bloods or rival gang members in a derogatory fashion. The officer also testified that the phrase "What's up, cuz?" is positive when one Crip says it to another Crip but that when said to an enemy it means, "I'm going to kill you." The officer said the phrase is used to see the person's expression right before the gang member shoots and kills the person. The officer also told of the bad reputation of the Crips gang and the criminal activities in which it engaged. The officer said that he did not know Stevenson nor did he know any of his friends or associates and that he had never seen Stevenson with any gang members.

We hold that from the evidence presented, a rational trier of fact could determine that Stevenson is a member of the Crips gang. Therefore, we hold that the trial court did not err in admitting the evidence. We overrule point two.

■ In a related point, Stevenson asserts in point four that the trial court erred by overruling his objection that testimony at punishment describing his tattoo was not a proper method of proving character. As previously noted, testimony linked the tattoo "bitch killa" to membership in the Crips gang. Gang membership is relevant character evidence and is admissible during the punishment phase of trial. *See Anderson*, 901 S.W.2d at 950. Therefore, the trial court did not err in allowing as character evidence the testimony regarding appellant's tattoo. We overrule point four.

■ Stevenson claims in point three that the trial court erred by refusing his request for a jury instruction on the absence of voluntary conduct. The undisputed evidence reflects that after threatening to shoot the complainant, Stevenson voluntarily shot his rifle in her direction, firing at least fifteen bullets, one of which struck her in the back.

Stevenson's complaint is based upon testimony by the complainant that while she was in the hospital, her boyfriend, James Easley, told her that he had pushed the gun to stop Stevenson from shooting. She said that after she heard the shots she looked back and saw Stevenson standing at the car shooting the gun. She indicated that she could hear bullets going by at waist level, perhaps into a bush to her left, before the bullet hit her.

James Easley testified that while he had touched Stevenson's gun before it was fired, he did not touch the gun after Stevenson started firing. The child witness to which we have previously referred said that Easley tried to snatch the gun just before Stevenson shot, but was not able to get the gun from him. She stated that Easley did not shoot the gun. Stevenson, in a statement, indicated that when the complainant came back out of her apartment, he pointed his rifle in the air and started firing it. He said that when she started to run and was about to turn a corner, he lowered the rifle in her direction. He indicated that he did not think he was going to hit her, but he fired about three or four more rounds at her. He did not mention anything about Easley interfering with his shooting the gun.

The evidence shows that Stevenson was voluntarily shooting at the complainant with his rifle. While there may be testimony that

at some point Easley pushed Stevenson's gun, there is no evidence that his pushing the gun caused Stevenson to involuntarily shoot the complainant.

Stevenson principally relies on the cases of *George v. State*, 681 S.W.2d 43 (Tex.Crim. App.1984); *Garcia v. State*, 605 S.W.2d 565 (Tex.Crim.App. [Panel Op.] 1980); and *Brown v. State*, 906 S.W.2d 565 (Tex.App.— Houston [14th Dist.] 1995) *aff'd*, 955 S.W.2d 276 (Tex.Crim.App.1997). We find two of these cases to be distinguishable, while the other case actually supports our conclusion. *Garcia* and *Brown* were both murder cases. In *Garcia*, the Court held that the trial court erred by not giving a charge on accident where there was testimony that the fatal shot was fired when the gun went off as the deceased tried to get it out of the defendant's hand. *Garcia*, 605 S.W.2d at 566. In *Brown*, there was testimony that the fatal shot was fired only when the defendant was bumped while he was "coming up with the gun." *Brown*, 906 S.W.2d at 566. In neither case was the defendant shooting at the deceased at the time of the interference by a third person.

In *George*, the defendant was convicted of aggravated assault-intentionally, knowingly, and recklessly causing serious bodily injury to another by shooting him with a handgun. *George*, 681 S.W.2d at 44. According to the evidence, the defendant, in the company of several friends, "demanded a dollar" from one of them. When the friend did not produce the dollar, the defendant drew a .22 caliber revolver from his pocket, pointed it at his friend's face, and told him "give me the dollar." The revolver discharged into the friend's face. *Id.* at 44. The Court held that there was no error in denying the defendant a charge on the voluntariness of his conduct,

> when such conduct also includes a bodily movement of the accused sufficient for the gun to discharge a bullet, without more— such as precipitation by another individual, as in *Garcia* and *Simpkins*, both supra—a jury need not be charged on the matter of

whether the accused voluntarily engaged in the conduct with which he is charged. *Id.* at 47.

As previously noted, in *Garcia* there was evidence that the firing of the gun was caused by the deceased trying to get the gun out of the defendant's hand and not by a voluntary movement on the part of the defendant. *Garcia*, 605 S.W.2d at 566. In *George*, the Court of Criminal Appeals was referring to the case of *Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim.App. [Panel Op.] 1979). In *Simpkins*, also a murder case, the defendant presented evidence that the fatal shot was fired while he and another were "tussling" with the gun when it accidentally went off. The defendant testified that he did not voluntarily pull the trigger. *Id.* at 133. This case is distinguishable from both *Garcia* and *Simpkins* because in both of those cases there was evidence that the defendant was not voluntarily firing the gun at the time of the alleged interference by another. Therefore, because the exception outlined in *George* is not applicable in this case and because the undisputed evidence shows that at all times Stevenson was voluntarily firing his weapon, the trial court did not err in refusing a charge on the voluntariness of Stevenson's conduct. *See George*, 681 S.W.2d at 47. We overrule point three.

We affirm the trial court's judgment.