**Jamie L. STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–97–00568–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 3, 1999.

Annette M. Henry, Houston, for appellant.

Michael J. West, Brenham, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

MAURICE E. AMIDEI, Justice.

Jamie L. Stewart appeals his conviction for attempted capital murder. The jury assessed his punishment at 50 years imprisonment and a $10,000.00 fine, to run concurrently with appellant's conviction in cause number 12006 for aggravated robbery. In seven issues, appellant contends the trial court erred in: (1) refusing to charge the jury on the lesser included offense of aggravated assault; (2) overruling appellant's objection to improper prosecutorial argument on facts not in evidence; (3) admitting into evidence song lyrics written in appellant's handwriting; (4) admitting into evidence photographs of appellant's tattoos and opinion testimony interpreting the tattoos as signifying gang membership; (5) admitting evidence of appellant's cousin's gang affiliation; (6) overruling appellant's objection to expert testimony regarding gang membership; and (7) denying appellant's claim of double jeopardy under the Texas Constitution. We affirm.

On March 9, 1995, Sadie Emery (Emery) was visiting friends on the Blinn College campus. At about 9:00 p.m., she was walking to her van in the parking lot, and was attacked by appellant. Appellant forced her into her van, and told her not to look at him or he would kill her. Appellant drove Emery's van a short distance, stopped, then ordered Emery to get out. When Emery got out of the van, she noticed appellant had a knife and a small, rectangular gun. Appellant then ordered Emery to lie face down on the ground. Appellant then attempted to shoot her with his .25 caliber pistol, but the gun would not fire. Emery testified she heard clicking sounds, and she assumed appellant was attempting to fire his gun. Emery then said, "You're going to kill me," and appellant said, "I'm not going to kill you." Appellant then stabbed Emery three times in the back of the neck with a large butcher knife. Appellant then left in Emery's van. Emery started calling for help, and saw lights in houses across the street. She could not walk, because her right leg would not move at all. The police arrived, and Emery gave the officers the license plate number of her van. She described her attacker as a black man in his early twenties wearing a blue plaid shirt and black knit cap.

After leaving Emery, appellant drove her van to Lake Charles, Louisiana, where he was stopped by police for speeding. Appellant told the officers his aunt owned the van, and that he was traveling from Houston. The officers checked the license plate on the van which revealed the van was stolen out of Brenham, and then arrested appellant. The van contained a jammed .25 caliber pistol, a bloody knife, rubber gloves, a black knit cap and various articles of appellant's clothing including a blue plaid shirt and a black jacket. The holster for the pistol was clipped to appellant's pants. Appellant said Curtis Winters did the stabbing. Winters testified at the trial that he did not know appellant, and had nothing to do with the offense. His mother stated that Winters was in

Houston the night of the attack. Emery observed Winters in court, and stated that he was not her attacker. Appellant testified that he took Emery's van after Winters stabbed her because he wanted to get to his mother's house in Jackson, Mississippi. Appellant acknowledged: (1) that he had been wearing a blue plaid shirt that night, (2) that he was the individual identified by other witnesses seen hiding behind a planter at Blinn earlier that night; and (3) that he had previously been in possession of both the knife and the gun used to attack Emery.

Dr. James Rose, a neurosurgeon, treated Emery at the hospital, and testified that Emery's spinal cord had been cut or lacerated. Dr. Rose testified that the knife wound that cut Emery's spinal cord was six to seven inches deep. After several months of rehabilitation treatment, Emery was capable of getting around with a leg brace on her right leg, but still had no feeling on her left side. Dr. Rose stated her condition is permanent and described it as "hemiparesis," or a weakness on the right side of her body, and loss of pain and temperature on the left side.

In issue one, appellant contends that the trial court erred when it denied his request for a lesser included instruction of aggravated assault in the jury charge on guilt or innocence. The State contends there is no error because there is no evidence raising the issue of a lesser included offense.

■ Before a charge on a lesser included offense is warranted, (1) the offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). In making this assessment, we are cognizant that if evidence from any source raises the issue of a lesser included of-

fense, a charge on that offense must be included in the court's charge. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim. App.1992).

■ In this case, appellant denied any part of the attack on Ms. Emery, and testified that Curtis Winters stabbed her with the knife. He stated he witnessed the attack on Ms. Emery, became scared, and took Emery's van to go to his mother's home in Jackson, Mississippi. "By his own testimony, the appellant was either guilty of attempted capital murder or guilty of no offense at all." *Wallace v. State*, 679 S.W.2d 1, 3 (Tex.Crim.App.1983) (appellant not entitled to jury charge on lesser offense of aggravated assault because he contended he did not point or fire a gun at a police officer). We find the trial court properly refused to charge the jury on aggravated assault because appellant contended he did not have any part of the attack on Ms. Emery. *Id.* We overrule appellant's contention in issue one.

In issue two, appellant contends the trial court erred in denying appellant's motion for a mistrial because the prosecutor argued to the jury that Ms. Emery was precluded from making an in-court identification of appellant because she was only able to identify one of two photographs in the hospital as resembling her attacker. Appellant's counsel objected on the grounds that the prosecutor was not precluded from asking Ms. Emery to identify appellant, and this was a misstatement of the law. Appellant's counsel further contended that Ms. Emery could not identify appellant, and asked the court to instruct the jury to disregard these comments. The trial court overruled appellant's objection and denied a mistrial. Appellant argues that by arguing to the jury that Ms. Emery could have identified appellant except for the fact that the court somehow precluded her from doing so, the State inserted new and harmful facts into the case that were not supported by the evidence at trial.

The State's argument and the exchange complained of is as follows, in pertinent part:

STATE: Then you've got the testimony of Sadie Emery. Now, Sadie Emery was shown a lineup of six pictures in the hospital. I think the testimony was that she was somewhat drowsy at the time. That's probably a mistake on the part of law enforcement, they should have waited until she got better because they already had someone in jail. But she was shown a total of six pictures. Out of those six pictures she picked out Stewart, the defendant. And she picked out a second person. She said, "I'm not sure, but it looks like one of these two people."

When this occurs, when a person is not able to pick out someone like that, our law precludes them from being able to sit up in the witness stand at a later date and point to someone and say this person did it, because she wasn't sure when she saw those two pictures. That doesn't mean she couldn't do it.

APPELLANT: Your, Honor, I object, that's an incorrect statement of the law.

THE COURT: It's overruled. Go ahead, sir.

STATE: That doesn't means [sic] she couldn't do it, it means she was precluded. I couldn't ask her that question.

APPELLANT: Your Honor, I object. May we approach?

THE COURT: Sure.

(Whereupon a brief discussion was held off the record.)

(The following objection was made outside the hearing of the jury in front of the court reporter for the record.)

APPELLANT: At this time the defense objects to the argument of counsel, the prosecutor, that he was precluded from asking Sadie Emery to identify Jamie Stewart. That is incorrect. He was not precluded from it. She could not identify Jamie Stewart. And I object and ask that the jury be instructed to disregard those comments.

The trial court overruled the objection, and denied appellant's motion for a mistrial.

■ On appeal, appellant contends the State violated appellant's right to confrontation under the United States and Texas Constitutions. Appellant made no objection on these grounds to the State's argument at trial; therefore, he has not preserved the issue of the alleged jury argument error on constitutional grounds. *McFarland v. State*, 928 S.W.2d 482, 510 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Furthermore, appellant cites no authority for this proposition and this contention is waived. *Moore v. State*, 935 S.W.2d 124, 128 (Tex.Crim.App.1996). We overrule appellant's contention in issue two.

In issue three, appellant contends the trial court erred in admitting into evidence at the punishment stage pages from appellant's notebook containing "rap" music lyrics written in appellant's handwriting. Appellant argues these documents were hearsay and harmful because he was not the author of the lyrics, and the violent nature of the lyrics was wrongfully attributed to him. The State argues that the lyrics were relevant to punishment, and to rebut testimony that appellant would be a good candidate for probation. The State further argues that the lyrics were admissible under article 37.07, § 3(a), Texas Code of Criminal Procedure, as "any matter the court deems relevant to sentencing, including ... his character...."

At the punishment hearing, the State introduced the lyrics into evidence, and appellant objected on the grounds that the documents were hearsay, irrelevant, and not probative. The trial court overruled appellant's objection, and Detective Rich read the lyrics to the jury. On cross-examination, Detective Rich opined that the lyrics were not particularly violent.

Thereafter, appellant testified that he would be a good candidate for probation, and, because he was an amateur rap performer, he copied the lyrics to perform at a later time.

■ The State argues the lyrics in appellant's handwriting are not hearsay because they were offered simply to show that it was made rather than to show its truth or falsity. Hearsay is an out-of-court statement offered as evidence to prove the truth of the matters asserted. TEX.R. EVID. 801(d); *Menchaca v. State*, 901 S.W.2d 640, 650 (Tex.App.-El Paso 1995, pet. ref'd) (contents of a hand-written letter were not offered for their truth, and letter did not constitute hearsay). When a party offers a statement simply to show that it was made rather than to show its truth or falsity, the hearsay rule does not bar its admission. *Id.* at 650 & n. 8. We find the lyrics written in appellant's handwriting were correctly admitted into evidence or, in any event, they were cumulative. Accordingly, we hold the trial court did not abuse its discretion for this reason.

The State cross-examined appellant about references to a .25 caliber pistol in the lyrics, the same caliber used in the offense charged, and references to a woman having her throat slit. Appellant stated these references were a coincidence. Appellant contends the only purpose the State had was to inflame the jury and make them think that appellant was violent. The State argues that evidence of appellant's violent character was relevant to the jury's assessment of punishment.

In *Beasley v. State*, the court of criminal appeals held that evidence of gang membership was admissible at the punishment phase for consideration of appellant's character and reputation in assessing punishment. 902 S.W.2d 452, 457 (Tex.Crim. App.1995). "A fair reading of Article 37.07, § 3(a), and rule 404(c) [Texas Criminal Evidence] implicates that the sentencer should be provided with all relevant evidence in order to assess fair and appropriate punishment." *Id.* In *Beasley*, much

evidence was heard about appellant's gang regarding violent and criminal behavior, such as drug trafficking, robberies, and witness intimidation. *Id.* at 456. The evidence showed appellant was a member of the Crips gang, that the Crips gang was involved in misconduct, and the Crips gang had a bad reputation in the community. *Id.* at 456. Such evidence was relevant to the character and reputation of the accused and could used to evaluate a fair sentence. *Id.* at 456–57.

■ If the evidence of the defendant's character or reputation is deemed relevant by the trial court, the evidence is admissible during punishment if it is permitted by the Rules of Evidence. *Id.* at 456. In this case, the lyrics were found to be admissible and relevant by the trial court to appellant's character and reputation at the punishment stage. The admissibility of character and reputation evidence at the punishment stage is within the sound discretion of the trial court. *Monroe v. State*, 864 S.W.2d 140, 143 (Tex. App.-Texarkana 1993, pet. ref'd). We may not overturn the determination unless a clear abuse of discretion by the trial court has been shown. *Id.* We find the trial court did not abuse its discretion in overruling appellant's objection and admitting the lyrics as character and reputation evidence at the punishment stage. We overrule appellant's contention in issue three.

■ In issue four, appellant contends the trial court erred in admitting into evidence photographs of appellant's tattoos and opinion testimony interpreting them as signifying gang membership. Detective Rich testified that appellant had two tattoos on his left arm: (1) a heart with wings indicating gang membership in the Black Gangster Disciples, and (2) a pitchfork indicating gang membership in Folk Nations. Appellant objected on the grounds that Detective Rich was not an expert on gang activity. The trial court overruled appellant's objection. Thereafter, appellant's counsel challenged Detective Rich's

statement that the photograph showed a "heart and wings." Appellant revealed his bare arm and Detective Rich corrected his observation stating the tattoo appeared to look more like dice than a heart and wings. Detective Rich did not know of any gang using dice tattoos.

The only objection to this evidence was that Detective Rich was not an expert. On this appeal, appellant argues that the evidence was not relevant, not probative, and unfairly prejudicial. Appellant further argues that expert testimony in the form of opinion evidence must be reliable and relevant. Appellant's complaint on appeal does not comport with his objection at trial. *Massey v. State*, 933 S.W.2d 141, 157 (Tex.Crim.App.1996). Therefore, appellant has not preserved these issues for review. *Id.* Furthermore, appellant cites no authority to support his objection that Detective Rich was not qualified to testify. Accordingly, appellant has also failed to preserve error for review by failing to support his objection at trial with argument and authority on this appeal. Tex. R.App. P. 38.1(h); *Ochoa v. State*, 955 S.W.2d 389, 391 (Tex.App.-San Antonio 1997, pet. ref'd) (failure to support evidentiary arguments with authority). For these reasons, we overrule appellant's contention in issue four.

In issue five, appellant contends the trial court erred in admitting appellant's cousin's gang affiliation as improper character impeachment. The prosecutor cross-examined appellant at the punishment stage asking him questions about his six tattoos. The offending question and exchange that followed are as follows:

> STATE: Tell us about your cousin, Roderick, that was a member of a gang in Jackson. In fact, you had several cousins that were members of gangs in Jackson, Mississippi, didn't you?
>
> APPELLANT'S COUNSEL: Your Honor, may we approach.
>
> THE COURT: Sure.
>
> (Whereupon a brief discussion was held off the record.)

> APPELLANT'S COUNSEL: Your Honor, I object to Mr. Sebesta trying to impeach Jamie Stewart with distant relatives that are not before this jury. We have no evidence of their character, and it's improper character evidence to impeach him with other peoples' character.
>
> THE COURT: It's overruled. Go ahead, sir.
>
> STATE: Have you ever told anyone that your cousin was a member of the Black Gangster Disciples?
>
> APPELLANT: Yes, sir.
>
> STATE: Did he have one of those pitchforks on his arm, too?
>
> APPELLANT: I don't recall. I don't know.

The State contends that this is more character evidence offered to show he was unsuitable for probation. The State's expert on gangs, Sgt. Tolson, was the Brazoria County coordinator for the Gang Enforcement Team. The function of the team is to track gangs through Brazoria County, gather intelligence, and perform zero tolerance on the gang members in high gang areas. He testified at length about the various factors that he considers in determining gang membership. Sgt Tolson stated the following factors signified a possible gang affiliation in appellant's case: (1) wearing all blue colors at the time of the crime; (2) tattoo of a pitchfork indicating membership in Folk Nations or Crips Gang; (3) tattoo of dice indicating membership in the Folk Nations; and (4) appellant's admission that his cousin is a member of the Black Disciples Group would show "association of some type with the Black Gangster Disciples that utilize those tattoos." Given these factors, Sgt Tolson testified that appellant was a possible gang member.

■ As we discussed under issue three, this type evidence is admissible under article 37.07, § 3(a), Texas Code of Criminal Procedure, as relevant to the defendant's character. *Beasley*, 902 S.W.2d

at 456–57. One of the factors in determining gang membership was appellant's association of "some type" with the Black Gangster Disciples that utilize those tattoos. Sgt Tolson stated that appellant's admission that his cousin is a member of the Black Disciples Group showed "some type" of association with a known gang. Accordingly, this evidence was properly admitted as another type of gang membership evidence to determine appellant's character. Appellant's contention in issue five is overruled.

■ In issue six, appellant contends the trial court erred in overruling his objection to Sgt Tolson's testimony regarding gang membership. Appellant argues the State did not prove that Sgt Tolson's testimony was reliable and relevant under the standard for scientific evidence set in *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992). After five pages of voir dire, appellant made the following objection, in pertinent part:

> But I would object to his testifying. He can only name nine of the criteria for identifying a gang member. He's only had eighty hours of training in the past year, and I believe that his testimony should be excluded under the Rules of Evidence.

Appellant did not object to the proposed testimony as being unreliable, but only challenged Sgt Tolson's qualifications as an "expert." Because appellant made no objection on the grounds of reliability of the expert testimony, he has failed to preserve this issue for review. *McFarland v. State*, 928 S.W.2d 482, 510 (Tex.Crim.App. 1996),*cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). *See Hepner v. State*, 966 S.W.2d 153, 159–60 (Tex.App.-Austin 1998, no pet. h.) (objection only as to relevancy of random match probability evidence (RMP) that a randomly selected person will match the DNA profile of trace evidence did not preserve for appeal his complaints that the State did not prove the reliability of the RMP evidence, that the RMP evidence was in fact unreliable, and the underlying facts or data did not provide a sufficient basis for the RMP testimony).

Furthermore, similar testimony by a police officer without personal knowledge of the appellant's gang-membership, was found admissible and relevant in *Stevenson v. State*, 963 S.W.2d 801, 803–04 (Tex.App.-Fort Worth 1998, pet. ref'd). In *Stevenson*, the court of appeals approved the testimony of a police officer that he had studied gangs and had previously testified as an expert in that field. *Id.* at 804. The officer testified that Stevenson (appellant) had a tattoo that stated "bitch killa," which related to gang activity, specifically that it referred to the Bloods or rival gang members in a derogatory fashion. *Id.* The officer also testified that the phrase, "What's up, cuz?" is positive when one Crip says it to another Crip but that when said to an enemy it means, "I'm going to kill you." *Id.* The officer also told of the bad reputation of the Crips gang and the criminal activities in which it engaged. *Id.* The officer said that he did not know Stevenson nor did he know any of his friends or associates and that he had never seen Stevenson with any gang members. *Id.* Citing *Beasley*, 902 S.W.2d at 454, the Fort Worth court observed that gang membership was established in *Beasley* by the defendant's wearing of gang colors and his association with gang members, not by a witness testifying that he or she knew that the defendant was in a gang. *Stevenson*, 963 S.W.2d at 804. In *Anderson v. State*, 901 S.W.2d 946, 948 (Tex.Crim.App. 1995), a police officer testified that he knew the defendant was a gang member because he was in the company of gang members and wore a gang tee shirt. *Stevenson*, 963 S.W.2d at 804. The *Stevenson* court did not address the testimony of the police officer under the *Kelly* reliability and relevance requirement. The issue on appeal was addressed to the lack of personal knowledge of the officer, and reliability was not raised at the trial court level. Because the issue of the reliability of rele-

vancy requirement for experts under *Kelly* is not before this court, we will not address it. We hold that the trial court did not err in admitting the testimony of Sgt Tolson as character evidence at the punishment stage. We overrule appellant's contention in issue six.

In issue seven, appellant contends the trial court erred in denying appellant's application for writ of habeas corpus under the double jeopardy provisions of the state constitution. Appellant filed an application for writ of habeas corpus on jeopardy grounds on January 16, 1996. The trial court denied the application, and the judgment of the trial court was affirmed by this court in *Ex Parte Jamie L. Stewart,* No. 14–96–00286 (Tex.App.-Houston [14 th Dist.] October 3, 1996, no pet.h.) (not designated for publication), *mandate issued,* November 19, 1996. In that opinion, this court answered the very same contentions raised by appellant in this issue, and that opinion is final and conclusive. Tex.R.App. P. 31.5. No further application in the same case can be made for the writ unless the law provides otherwise. *Id.* The record does not contain a verified special plea of double jeopardy required by article 27.05 and 27.06, Texas Code of Criminal Procedure. Therefore, appellant presented no error to the trial court nor preserved error for appellate review. *See Apolinar v. State,* 820 S.W.2d 792, 793–94 (Tex.Crim. App.1991); *Nash v. State,* 467 S.W.2d 414, 415 (Tex.Crim.App.1971); *State v. Lara,* 924 S.W.2d 198, 201–02 (Tex.App.-Corpus Christi 1996, no pet.h.); *Casey v. State,* 828 S.W.2d 214, 216 (Tex.App.-Amarillo 1992, no pet.). We overrule appellant's contention in issue seven, and we affirm the judgment of the trial court.

Justice WITTIG concurs in the result only.