In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00181-CR


______________________________




CHARLES DEWEY SAMPAY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 230th Judicial District Court


Harris County, Texas


Trial Court No. 916872




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Charles Dewey Sampay was convicted in the 230th Judicial District Court of Harris County
of the offense of robbery. Sampay was found guilty of a second-degree felony and sentenced to ten
years' imprisonment pursuant to a plea bargaining agreement. Sampay was indigent at trial and
represented by appointed counsel. As part of the plea bargaining agreement, he waived his right to
have a court reporter present. 

 There is also a stamped notation on the judgment itself that reads "Appeal waived. No
permission to appeal granted." This notation is explicitly supported by the plea bargaining
agreement itself, in which Sampay signed a statement that if the plea bargain was kept, he agreed to
waive his right of appeal. That waiver is signed by Sampay, his attorney, the district clerk, the
assistant district attorney, and the presiding judge. The record reflects he was sentenced in
accordance with the plea bargaining agreement.

 A criminal defendant may waive many rights, including the right to appeal a conviction. 
Blanco v. State, 18 S.W.3d 218, 219-20 (Tex. Crim. App. 2000). That waiver is binding on the
defendant and prevents him from appealing any issue in the case without the consent of the court. 
Id. Sampay agreed, with the concurrence of counsel, to plead guilty and to waive his right to appeal. 
We will hold him to his agreement. See id. 



 The appeal is dismissed.




 Ben Z. Grant

 Justice


Date Submitted: November 6, 2002

Date Decided: November 7, 2002


Do Not Publish



60;        

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 03F0135-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Reginald Browner pled "not guilty" to the charge of possessing a "shank" at the
Telford Unit of the Texas Department of Criminal Justice (TDCJ) in New Boston and
submitted the case to a jury. See Tex. Pen. Code Ann. § 46.10 (Vernon 2003). After a
short trial and fifteen minutes of deliberation, the jury found Browner guilty as charged in
the indictment. The trial court subsequently sentenced Browner to fifteen years'
imprisonment, in accordance with the jury's punishment recommendation. Browner timely
appealed the trial court's judgment. 
          On February 24, 2005, Browner's appellate counsel filed an Anders


 brief in which
counsel professionally discussed the record, described the issues reviewed, and concluded
there were no arguable grounds for appeal and, as required by Anders, also filed a motion
to withdraw. Counsel also sent Browner a copy of the appellate brief and informed
Browner of his right to review the record and to file a response pro se. Counsel also took
the commendable step of sending Browner a complete copy of the appellate record in this
case. 
          We informed Browner on March 1, 2005, that his response, if any, was due to be
filed by March 31, 2005. As of this date, we have not received a responsive pro se brief. 
Nor has the State filed an independent evaluation of the case. See Tex. Code Crim. Proc.
Ann. art. 2.01 (Vernon 2005).
          We have independently reviewed the record and the brief filed by counsel in this
appeal, and we agree there are no arguable issues that would support an appeal in this
case. Accordingly, we affirm the trial court's judgment.
I. Factual and Legal Sufficiency To Support a Finding of Guilt on the Lesser Offense
          We first note that the evidence is sufficient to support Browner's conviction for
possession of a deadly weapon in a penal institution. In reviewing the legal sufficiency of
the evidence, we view the relevant evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000). In a factual sufficiency review, we view all the evidence in a neutral light and
determine whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
          As defined by statute, the elements of the alleged offense are (1) intentionally,
knowingly, or recklessly; (2) carrying about one's person or possessing or concealing; (3) a
deadly weapon; (4) in a penal institution. Tex. Pen. Code Ann. § 46.10(a). Our law defines
the term "deadly weapon" as "anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B)
(Vernon Supp. 2004–2005). This offense is a third degree felony.  Tex. Pen. Code Ann.
§ 46.10(d). 
          Lieutenant Steven Fahrquar,


 a seven-year employee of the TDCJ, testified in this
case. On September 15, 2002, Fahrquar had been assigned to supervise the showering
of inmates. According to Fahrquar's testimony, inmates who are classified as T-5
offenders must be strip searched before being allowed to shower. On this date, Fahrquar
asked Browner if he wanted to take a shower, and Browner said, "Yes." Fahrquar then
instructed Browner to remove his clothing and give it to Fahrquar for inspection. Browner
complied, except he did not remove his underwear. When Fahrquar asked Browner to
remove his underwear, Fahrquar saw Browner remove what Fahrquar described as a
"homemade stabbing device."


 Browner placed the item on the table in his cell. Fahrquar
instructed Browner to step to the door, place his hands through the food service slot to
allow Fahrquar to apply the handcuffs, and Browner complied. Once Browner and his cell
had been secured, Fahrquar entered the cell and seized the device, which was then
admitted at trial. 
          Ronald Stafford also testified for the State. Stafford works for the office of the
Inspector General, which is part of the TDCJ. Stafford was assigned to the Telford Unit
on September 16, 2002, and retrieved the weapon in question from Browner's cell. 
Stafford testified that the "shank" found in Browner's cell was a deadly weapon because
"by its design it could be used to cause serious bodily injury or actually kill someone." 
Stafford also told the jury that, during his career with the TDCJ, he has seen someone who
was killed or seriously injured with a weapon similar to the one at issue in this case. 
          Viewing the evidence in the light most favorable to the prosecution, there is
evidence to support the jury's finding that the prosecution met its burden of proof for each
legal element of the charged offense. Browner had possession of a shank, the possession
occurred in his cell at the Telford Unit (a division of the TDCJ), and the weapon in question
was capable of causing serious bodily injury or death. We also believe the jury's finding
of guilt is not irrational, against the great weight of the evidence, or manifestly unjust. See
Zuniga, 144 S.W.3d at 482, 484–85. Accordingly, we hold the evidence is legally and
factually sufficient to support the trial court's judgment of conviction.
II. Jury Charge on Reasonable Doubt
          At the conference on the jury charge for guilt/innocence, Browner requested the trial
court to instruct the jury on a definition of "reasonable doubt," using a definition from In re
Winship, 397 U.S. 358 (1970). The trial court denied the requested instruction. The Texas
Court of Criminal Appeals has expressly stated that "the better practice is to give no
definition of reasonable doubt at all to the jury." Paulson v. State, 28 S.W.3d 570, 573
(Tex. Crim. App. 2000) (overruling Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App.
1991)). Winship did not mandate that trial courts define the term "reasonable doubt," nor
does our jurisprudence require such. The trial court properly overruled Browner's
requested jury instruction.
III. Punishment
          We next turn to whether any reversible error arose during the punishment trial. After
finding that Browner had been previously and finally convicted of a felony offense, the trial
court instructed the jury to assess Browner's punishment within the range provided for a
second degree felony. The punishment range for a second degree felony is imprisonment
for not less than two years nor more than twenty years. Tex. Pen. Code Ann. § 12.33
(Vernon 2003). The punishment range for Browner's offense was increased from a third
degree felony to a second degree felony because Browner pled "true" to having been
previously convicted of a felony offense. See Tex. Pen. Code Ann. § 12.42(a)(3) (Vernon
Supp. 2004–2005); Graham v. State, 546 S.W.2d 605, 608 (Tex. Crim. App. 1977) (plea
of "true" to enhancement paragraph provides sufficient evidence to support enhanced
sentence). The evidence is, therefore, sufficient to support Browner being sentenced
within the range provided for second degree felonies.
          The jury also heard testimony that prison officials had confiscated documents from
Browner that possibly linked him to gang activity (specifically the "Crips" gang) when he
entered prison. Evidence of gang activity is admissible during the punishment phase of a
trial as relevant character evidence. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2004–2005) (evidence of any matter court deems relevant admissible,
including accused's character); Stewart v. State, 995 S.W.2d 251 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).
          While being cross-examined about several documents found in Browner's
possession, Frank Warner (a sergeant with the TDCJ at the Telford Unit) and Browner's
counsel, the following exchange took place before the jury:
QIs that Reginald Browner's art work?
 
AYes. It was confiscated from his property.
 
QDid he draw that?
 
AI don't know if he drew it or not, sir. It was found in his
property.
 
QDid he draw that [pointing to another document]?
 
AI don't know, sir.

                     Q        Is this garbage his handwriting? 

                     A        Yes, it is.

                     Q        Are you a handwriting examiner?

                     A        No, I'm not.

                     Q        Is that his handwriting? Is that his cursive?

                     A        As I stated --

                     Q        Is that a yes or no, sir?

                     A        -- the property was confiscated.

                     Q        Is that a yes or no? Is that his handwriting?

                     A        If you continue to go through the pile, sir --
 
QAnd I'm going to continue to go through the pile. Is that his
handwriting?
 
A-- you will find a letter that he wrote and you can compare the
handwriting for yourself.
 
QIs this his handwriting?
 
AI have no idea, sir.
 
. . . .
 
QIs that his handwriting?
 
APersonally, I have no knowledge of his handwriting. If you ask
him [Browner], he may be able to identify it.
 
(Emphasis added.) Counsel immediately objected to Warner's testimony as "a comment
on [Browner's] Fifth Amendment right" to not testify. The trial court immediately sustained
the objection and sua sponte instructed the jury to disregard Warner's last statement; the
trial court further instructed the jury to not assume Browner had any obligation to testify. 
The trial court subsequently overruled Browner's request for a mistrial. 
          When a trial court sustains an objection to a comment on a defendant's failure to
testify and instructs the jury that it is to disregard the inappropriate comment, but the court
then refuses to grant a mistrial, the issue on appellate review is whether the trial court
erred by denying the motion for mistrial. Dotson v. State, 146 S.W.3d 285, 298 (Tex.
App.—Fort Worth 2004, pet. ref'd). The resolution of whether the trial court erred hinges
"on whether the court's instruction to disregard cured the prejudicial effect, if any," caused
by the improper comment. Id. Generally, an instruction to disregard cures any prejudicial
effect. Id. Given the trial court's swift response in this case, its explicit and immediate
instruction to disregard the witness' improper comment, and the court's subsequent written
instruction in its jury charge that the jury should not (and could not) hold Browner's failure
to testify against him, we believe the trial court's actions cured the error in Warner's
testimony.
          The jury in this case assessed punishment at fifteen years, which was within the
range provided by statute based on Browner's judicial confession of having been previously
convicted of a felony offense. The evidence of Browner's possible gang affiliation was
properly admitted. And the trial court cured any prejudicial effect of Warner's improper
comment on Browner's failure to testify by issuing a prompt instruction to the jury to
disregard. Nothing else in the record before us suggests an arguable error occurred during
the punishment trial.



IV. Conclusion
          Because our independent review of the record reveals no reversible error at
guilt/innocence or punishment, we affirm the trial court's judgment.
 
                                                                           Donald R. Ross
                                                                           Justice

 
Date Submitted:      May 10, 2005
Date Decided:         July 11, 2005

Do Not Publish