

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00466-CR

Jodi Renae **MORRISON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CRW2112272
Honorable Russell Wilson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Patricia O. Alvarez, Justice
    Beth Watkins, Justice

Delivered and Filed: June 26, 2024

AFFIRMED

Appellant Jodi Renae Morrison appeals from her conviction for aggravated assault with a deadly weapon of a household member. She argues that the evidence was insufficient to support a finding that she was the complainant's household member. She also argues that the trial court abused its discretion during the punishment phase by admitting lyrics from a journal found among her belongings. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

When Morrison met the complainant and her family, she was homeless and caring for a baby. The baby's father was also homeless. The complainant pitied Morrison's baby and began helping Morrison's small family.

At first, the complainant and her family allowed the biological father to stay with them. Morrison and her baby stayed with a boyfriend. When that boyfriend broke up with her, Morrison and her baby went to stay with the complainant and her family. After a while, the biological father left.

Morrison and her baby continued to stay with the complainant and her family for a little over a year. At first, Morrison was not working. She stayed at the complainant's home all day and ate meals with the family. Her baby slept in a doll bed, and Morrison slept on a couch.

Morrison left at one point for a few months to join Job Corps, a federal job-training program, to get her diploma and choose a career path. However, she was unsuccessfully discharged from the program, and she returned to the complainant's home.

On two other occasions, Morrison "ran away" from the complainant's home for about a week each time. The first time, she broke into a neighbor's house. The second time, the complainant called Child Protective Services.

Aside from these interruptions, Morrison stayed at the complainant's home, contributing grocery money when she could and helping with chores.

At times, there were tensions in the home—arguments about interpersonal differences. Nevertheless, it was a shock to the complainant's family when Morrison took a .22 rifle she found at the home and shot the complainant in the back of the head. The complainant survived, and Morrison was charged with aggravated assault with a deadly weapon of a household member.

Morrison was convicted of the charge against her, and she was sentenced to thirty years' imprisonment. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

**A. Parties' Arguments**

Morrison argues that a necessary element of her conviction—that the complainant was a household member—was not proved. She therefore argues that the evidence in support of her conviction for aggravated assault with a deadly weapon against a household member was insufficient. The State responds that the bar for meeting the definition of a household member is low and that the evidence supported the jury's verdict.

**B. Standard of Review**

Morrison challenges the legal and factual sufficiency of her conviction for aggravated assault with a deadly weapon of a household member, but "[t]his [c]ourt reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge." *Shah v. State*, 414 S.W.3d 808, 811 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**C. Law**

Whether a complainant is a household member (for purposes of proving aggravated assault against a household member) depends on whether the complainant and the aggressor were living

together. *See* TEX. PENAL CODE ANN. § 22.02(b); TEX. FAM. CODE ANN. § 71.005; *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023).

"The terms 'living together' or 'living' are not defined by the Family Code or the Penal Code, which incorporates section 71.005 by reference, so we must give these terms their ordinary and common meaning. In determining the ordinary and common meaning of an undefined word in a statute, we may consider dictionary definitions." *See Shah*, 414 S.W.3d at 812 (citing *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004)).

Based on the dictionary's definition, the *Shah* court defined *live* (*living*) as "to occupy a house, to dwell or reside, or to cohabitate." *Id*. (citing Random House Webster's Unabridged Dictionary, 1124 (2nd ed. 2001); Webster's 3rd New International Dictionary (1981 ed.)). "This is a 'low legal threshold,'" and factfinders may take a flexible approach in determining whether two people are household members to each other. *Turner v. State*, 650 S.W.3d 803, 807–808 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Gomez v. State*, 183 S.W.3d 86, 90 (Tex. App.—Tyler 2005, no pet.)); *see also Shah*, 414 S.W.3d at 812–13 (legally sufficient evidence showed defendant and complainant were living together when defendant had moved personal items into the complainant's apartment, "set up camp" there, was staying there "every night" and "never left"); *Dixon v. State*, No. 05-09-00901-CR, 2010 WL 2180371, at *4 (Tex. App.—Dallas June 2, 2010, no pet.) (mem. op., not designated for publication) (defendant and complainant, both homeless, were determined to be household members even though they lived at an abandoned car wash); *Word v. State*, No. 11-03-00403-CR, 2005 WL 994690, at *3 (Tex. App.—Eastland Apr. 28, 2005, pet. dism'd) (mem. op., not designated for publication) (holding evidence sufficient to prove that defendant and complainant were members of same household based upon, inter alia, complainant's testimony that defendant was at her apartment "all the time").

We adopt the *Shah* definition of *live* (*living*) and define that term as "to occupy a house, to dwell or reside, or to cohabitate."

## D. Analysis

The complainant's husband testified that Morrison was living with his family at the time of the assault. Their home was full, so Morrison was allowed to use the couch as her bed. At some point, she started sleeping on a chair outside in the yard because she said she was tired of staying inside. There was also a swing under a tree in the yard that she sometimes slept on, and sometimes she chose to sleep in the barn. Nevertheless, Morrison contributed to and participated in the complainant's household.

To stay at the home, Morrison was expected to do chores around the complainant's house and ranch. She also contributed money she earned whenever she had a job, and she shared her government benefits because she and her baby ate at the complainant's home. The complainant's husband testified that the money paid for baby food and diapers. Morrison talked about getting a place of her own, but she struggled to keep a job. Morrison ate meals with the family, and the family helped care for her baby.

The complainant's son (who was seventeen years old at the time of trial) also testified that Morrison stayed with the family at their home. He testified that there were times she chose to sleep outside under a tree or in the barn. Overall, according to the complainant's son, Morrison ate dinners with the family, participated in their family events, and completed chores for the household.

Viewing the testimony in the light most favorable to the verdict, we conclude that a rational juror could have concluded beyond a reasonable doubt that Morrison was a member of the complainant's household. *See Brooks*, 323 S.W.3d at 912.

We next address Morrison's second issue.

**ADMISSION OF STATE'S EXHIBITS DURING THE PUNISHMENT PHASE**

**A.      Parties' Arguments**

Morrison argues that the trial court erred by admitting journals and song lyrics during the punishment phase that were found among her belongings. At trial, she argued that the State had not established that she had written the journals. During the punishment phase, she admitted she wrote them. On appeal, she complains that the contents of the journals were 1) more prejudicial than probative, 2) improper hearsay, and 3) not relevant. The State responds that 1) Morrison waived her prejudice argument at trial; 2) statements by a defendant are admissible non-hearsay; and 3) her lyrics were relevant to the jury's determination of an appropriate sentence.

**B.      Standard of Review**

"A trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of trial." *Schultze v. State*, 177 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). "We will not disturb a trial court's determination regarding the admissibility of relevant evidence unless an abuse of discretion has been shown." *Id.* (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)).

**C.      Law**

*1. Rules 401 & 403*

At a punishment-phase trial, "evidence may be offered by the state ... as to any matter the court deems relevant to sentencing…." TEX. CODE CRIM. PROC. ANN. art. 37.07; *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). "Evidence is relevant to sentencing if the evidence is 'helpful to the [factfinder] in determining the appropriate sentence for a particular defendant in a particular case.'" *Bohanna v. State*, No. 14-19-00936-CR, 2021 WL 1917663, at *8 (Tex. App.—Houston [14th Dist.] May 13, 2021, pet. ref'd) (citing *Rodriguez v. State*, 203 S.W.3d 837, 842

(Tex. Crim. App. 2006)). For example, statements or writings by a defendant may illustrate their state of mind and character and assist the jury in arriving at an appropriate sentence. *See Stewart v. State*, 995 S.W.2d 251, 256 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Nevertheless, "relevant evidence is still subject to exclusion pursuant to Texas Rule of Evidence 403." *Id*. (citing TEX. R. EVID. 403; *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006)). Therefore, "[i]f the opponent of the evidence lodges an objection based on Rule 403, the trial court must weigh the probative value of the evidence against the potential for unfair prejudice." *Id*. (citing *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd)). If no such objection is made, then we will not review it on appeal. *See* TEX. R. APP. P. 33.1(a); *Thompson v. State*, No. 03-18-00654-CR, 2020 WL 5884113, at *3 (Tex. App.— Austin Sept. 30, 2020, no pet.) (mem. op., not designated for publication); *Montano v. State*, No. 13-14-00194-CR, 2015 WL 233366, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 15, 2015, no pet.) (mem. op., not designated for publication).

*2. Rule 802*

Hearsay, i.e., an out-of-court statement offered for the truth of the matter asserted, is generally not admissible at trial unless an exception exists under the Rules of Evidence or other relevant statute. *See* TEX. R. EVID. 802; *Hunt v. State*, No. 14-07-00286-CR, 2008 WL 850134, at *3 (Tex. App.—Houston [14th Dist.] Apr. 1, 2008, pet. ref'd) (mem. op., not designated for publication); *Torres v. State*, No. 13-05-00778-CR, 2007 WL 2052649, at *2 (Tex. App.—Corpus Christi–Edinburg July 19, 2007, pet. ref'd) (mem. op., not designated for publication). Some out-of-court statements are simply defined as non-hearsay. *See* TEX. R. EVID. 801(e). For example, statements by a party opponent are considered admissible non-hearsay. *See* TEX. R. EVID. 801(e)(2); *McNair v. State*, 75 S.W.3d 69, 72 (Tex. App.—San Antonio 2002, no pet.) (citing *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999)). In a prosecution by the State, this

means that the defendant's out-of-court statements are considered admissible under Rule 801. *See* TEX. R. EVID. 801(e)(2)(A).

**D.      Analysis**

*1.   Rules 401 & 403*

In reviewing whether the song lyrics found in a journal among Morrison's belongings were relevant to the jury's determination of an appropriate sentence, we conclude that they were. *See* TEX. R. EVID. 401. The lyrics read as follows:

> I SHOT YOU DEAD! [5x] I shot you dead. Now my face turned red from the blood stain. An [sic] when I did it I felt no pain. None. not [sic] a single feeling. Your blood went up to the ceiling. Nope I didn't feel a thing. I just shot & took everything. I didn't even cover my face. Cause [sic] I wanted you to pay for all the shit you've done to me. I didn't wear a mask cause [sic] I want [sic] to be the last thing you'd ever see. I did 12 shots to yo [sic] body.
> F—ed up yo [sic] face it look [sic] narley [sic]. Ain't gon [sic] hide the bodies. Just drove off in da [sic] rain.

On similar facts related to the same issue, the Fourteenth Court of Appeals in *Stewart v. State* concluded that song lyrics were properly admitted at sentencing where the trial court found them to be relevant to the appellant's character and reputation. *See Stewart*, 995 S.W.2d at 256. The *Stewart* court reiterated that "admissibility of character and reputation evidence at the punishment stage is within the sound discretion of the trial court." *Id*. (citing *Monroe v. State*, 864 S.W.2d 140, 143 (Tex. App.—Texarkana 1993, pet. ref'd)).[1]

Under *Stewart*, the trial court in this case may have found that the lyrics found in Morrison's belongings revealed an unrepentant and violent state of mind. *See id*. It may have

---

[1] The *Stewart* court also concluded that the defendant's lyrics were not subject to exclusion as hearsay because they were not offered to prove the truth of the matter asserted: "When a party offers a statement simply to show that it was made rather than to show its truth or falsity, the hearsay rule does not bar its admission." *Stewart v. State*, 995 S.W.2d 251, 256 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing TEX. R. EVID. 801(d); *Menchaca v. State*, 901 S.W.2d 640, 650 & n.8 (Tex. App.—El Paso 1995, pet. ref'd)).

further found that the information could have helped the jury decide what type of sentence was appropriate for Morrison. *See Bohanna*, 2021 WL 1917663, at \*8. Accordingly, Morrison's Rule 401 complaint is overruled.

Regarding whether the journals and lyrics were unduly prejudicial under Rule 403, the State correctly argues that Morrison failed to lodge a Rule 403 objection during her punishment phase. Because the trial court was not presented with an objection under Rule 403, we do not consider it now. *See* TEX. R. APP. P. 33.1. Morrison's Rule 403 argument is overruled.

*2. Rule 802*

Although Morrison poses the argument that her journals should not have been admitted during her punishment phase because the statements in them amounted to hearsay, Morrison was a party opponent to the State. *See* TEX. R. EVID. 801(e)(2). Therefore, her out-of-court statements were admissible under Rule 801 as non-hearsay. *See id*. Morrison's hearsay argument is overruled.

## CONCLUSION

Because the evidence at trial was sufficient to allow a rational juror to conclude that Morrison was a member of the complainant's household beyond a reasonable doubt and because the trial court did not abuse its discretion by admitting violent lyrics from journals that were found with Morrison's belongings at the punishment-phase trial, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish