**Opinion issued December 10, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00475-CR

————————————

## ANTONIO HOPKINS-MCGEE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1634395**

---

## MEMORANDUM OPINION

A jury convicted appellant, Antonio Hopkins-McGee, of murder and assessed

punishment at life in prison.[1]  In four issues on appeal, Hopkins-McGee contends:

(1) his counsel was ineffective in the guilt/innocence and punishment phases of trial

---

[1]     *See* TEX. PENAL CODE § 19.02.

and (2) the trial court abused its discretion by admitting into evidence certain text messages and rap lyrics.

We affirm.

## Background

On November 21, 2017, Cameron Mitchell was visiting his family and friends at the Carlisle apartment complex at 9898 Forum Park Drive in Harris County, Texas when he heard gunshots coming from the pool area. Mitchell saw the victim, Darren Young, get shot and fall to the ground, and then an individual wearing red clothing and a ball cap leave the pool area.

Yvette Bouldin, a resident at the Carlisle apartment complex, was also in her apartment getting ready for work when she heard gunshots. Immediately after the shooting, Hopkins-McGee, who Bouldin knew as "Little Tony," came to her apartment. Bouldin knew "Little Tony" through his father's girlfriend, Sofia, with whom Bouldin previously had a sexual relationship. Hopkins-McGee told Bouldin that someone had "shot up the apartment he was living in," and that he found that person and shot him. Hopkins-McGee then showed Bouldin that he had two firearms in his waistband, one on each side. Bouldin told Hopkins-McGee that he had to leave, at which point he threatened Bouldin, stating that "if the police found out . . . [Bouldin] was next." Bouldin recalled that Hopkins-McGee was wearing a red hoodie on the day of the shooting.

2

Darren Young's body was found in the middle of the apartment complex, next to the pool. Police recovered numerous .22 cartridge casings near Young's body. One of Young's sandals was off his foot and located a short distance behind his body. The medical examiner found that Young had been shot seven times. Each gunshot wound had a back-to-front trajectory, indicating that they all came from behind. The medical examiner determined that the cause of death was multiple gunshot wounds, inflicted by a handgun.

Detective J. Young, the Houston Police Department homicide detective who investigated Darren Young's murder, testified that surveillance video was recovered from the complex. The footage showed the suspected shooter wearing a red hoodie, blue ball cap, black backpack, gray sweats, and red shoes. The images from the surveillance video were consistent with the descriptions of the shooter given by witnesses, including Mitchell and Bouldin.

After Hopkins-McGee's arrest in April 2018, police seized his cell phone extracted the data it contained. An extraction report, which detailed the data obtained from the "phone dump," showed that the owner's name was listed as "Antonio's iPhone," the Apple ID associated with the cell phone was listed as c*****17@icloud.com, and the phone number associated with the cell phone was 713-2**-1**1. Police obtained historical phone records for this phone number and learned that the associated subscriber was Antonio Hopkins-McGee.

3

On the cell phone, police found photographs of Hopkins-McGee around the time of the murder—both before and after—that depict him wearing clothing consistent with the attire of the suspected shooter in the surveillance footage. There also was a screen capture (dated November 22, 2017) of a news article describing Young's murder. In addition, police found a text message sent from Hopkins-McGee to his girlfriend about a month after the murder that stated: "Don't even say nothing to him cause ion wanna have to put another n***a on the news."

In his defense, Hopkins-McGee presented testimony from a number of witnesses that he was in Chicago at the time of the murder, including testimony from his grandmother that she saw Hopkins-McGee in Chicago on November 22, 2017, the day before Thanksgiving, and that Hopkins-McGee stayed with her until he left Chicago in March or April 2018.

The State presented conflicting evidence showing that Hopkins-McGee's cell phone was near 9898 Forum Park Drive during the time of the murder on November 21, 2017. The cell phone records also indicated that Hopkins-McGee was in the Houston area between November 6 and November 23, two days after the murder. Beginning on November 23, Hopkins-McGee's cell phone tracked his movements from Houston to Dallas; from Dallas to Little Rock, Arkansas; from Little Rock to Memphis, Tennessee; and finally into Chicago, Illinois on November 24.

The State also presented text messages retrieved from Hopkins-McGee's cell phone that were sent between himself and his grandmother on November 23 and 24. In those text messages, Hopkins-McGee's grandmother stated that she missed him and wished him a "Happy Thanksgiving," and he stated that he would "b there soon."

## Ineffective Assistance of Counsel

In his first and fourth issues, Hopkins-McGee argues that his trial counsel rendered ineffective assistance in both the guilt/innocence phase and the punishment phase of trial. In particular, Hopkins-McGee argues his trial counsel was ineffective during the guilt/innocence phase for failing to object to: (1) allegations that Hopkins-McGee tampered with a witness; (2) crime scene photographs; (3) inflammatory photographs of Hopkins-McGee holding a gun; and (4) a photograph of Hopkins-McGee taken during his arrest. Hopkins-McGee also argues that his trial counsel was ineffective during the punishment phase for failing to object to the admission of rap lyrics into the evidence.

### A.     Standard of Review and Applicable Law

The United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. This right necessarily includes the right to the reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To prevail on a claim of ineffective

5

assistance of counsel, an appellant must prove that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Garcia*, 57 S.W.3d at 440.

In reviewing counsel's performance under *Strickland*'s first prong, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. 466 U.S. at 689. To defeat this presumption, any allegation of ineffectiveness must be firmly founded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). Generally, counsel should be given an opportunity to explain his or her actions before being found ineffective. *Id.*

In most cases, direct appeal is an inadequate vehicle for raising an ineffective assistance claim because the record is undeveloped and does not adequately reflect the motives behind trial counsel's actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). In the face of a silent record, we cannot know counsel's strategy, so we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Under *Strickland*'s second prong, in reviewing whether there is a reasonable probability that, but for trial counsel's deficiency, the result of the proceeding would have been different, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It will not suffice for an appellant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). Rather, an appellant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.*

With respect to claims of ineffective assistance during the punishment phase of a trial, an appellant must show a reasonable probability that the assessment of punishment would have been less severe in the absence of trial counsel's allegedly deficient performance. *Bazan v. State*, 403 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). It is not enough that counsel's errors may have had some conceivable effect on the outcome of the punishment assessed; rather, the likelihood of a different result must be "substantial." *Id.*

An appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

7

To demonstrate that trial counsel's failure to object constitutes ineffective assistance, an appellant "must show that the trial judge would have committed error in overruling such an objection" if it had been asserted. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).[2]   In addition, counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Agbogwe v. State*, 414 S.W.3d 820, 835 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Here, because Hopkins-McGee did not file a motion for new trial, the record is silent as to why trial counsel did not object to the complained-of evidence and testimony.  When the record is silent on counsel's reasoning or strategy, we will not speculate to find counsel ineffective on appeal. *See Henderson v. State*, 29 S.W.3d 616, 624 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).  Instead, as stated above, we will only find deficient performance if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

## B. Ineffective Assistance During the Guilt/Innocence Phase

In his first issue, Hopkins-McGee contends his trial counsel was ineffective during the guilt/innocence phase of trial for failing to object to: (1) allegations that

---

[2]   S*ee also Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) ("When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible.").

Hopkins-McGee tampered with a witness; (2) crime scene photographs; (3) inflammatory photographs of Hopkins-McGee holding a gun; and (4) a photograph of Hopkins-McGee taken during his arrest. Hopkins-McGee argues that these failures cannot be explained by any rational trial strategy and that their cumulative effect was to deprive him of the effective assistance of counsel.

### 1. Failure to object to allegations of witness tampering

Hopkins-McGee first argues that he received ineffective assistance of counsel because his trial counsel failed to object to Bouldin's testimony that Hopkins-McGee admitted to her that he shot someone and that she would be next if she told the police. Hopkins-McGee points out that this allegation of a threat amounts to an admission of an extraneous offense, which could include the Texas Penal Code offenses of either witness tampering or retaliation.[3] Hopkins-McGee contends that trial counsel should have objected on the grounds that this testimony concerned an inadmissible extraneous offense under Texas Rule of Evidence 404(b) or that its probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury under Texas Rule of Evidence 403.

---

[3] *See* TEX. PENAL CODE § 36.05(a)(2) (tampering with a witness includes "coerc[ing] a witness or a prospective witness in an official proceeding . . . to withhold any testimony [or] information"); *id.* § 36.06(a)(1)(A)–(B) (retaliation includes "intentionally or knowingly . . . threaten[ing] to harm another by an unlawful act . . . in retaliation for or on account of the . . . status of another as a . . . witness [or] prospective witness . . . or [a] person who has reported or who the actor knows intends to report the occurrence of a crime").

9

Rule 404(b) prohibits the admission of evidence of "a crime, wrong, or other act . . . to prove a person's character," though this evidence may be admissible for another purpose. TEX. R. EVID. 404(b)(1)–(2). Rule 403 provides that the trial court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

In the face of a silent record, we conclude that trial counsel's failure to object to Bouldin's testimony under Rule 404(b) or Rule 403 was not "so outrageous that no competent attorney would have engaged in it." As the State points out, the Texas Court of Criminal Appeals has held that attempts to tamper with or bribe a witness constitute evidence of a "consciousness of guilt" on the defendant's part and, thus, are admissible under Rule 404(b)(2). *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996).[4] The Texas Court of Criminal Appeals has also held that

---

[4] S*ee also Gonzalez v. State*, 117 S.W.3d 831, 842 (Tex. Crim. App. 2003) (concluding that allegation that defendant, through his attorney, attempted to bribe witness for favorable testimony, "was not merely tangential to the case or to defendant's guilt, but would support an inference that such conduct demonstrated defendant's consciousness of guilt for the crime charged"); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (concluding attempt to tamper with witness is evidence of consciousness of guilt).

the probative value of a crime showing consciousness of guilt may outweigh its prejudicial impact under Rule 403. *See Ransom*, 920 S.W.2d at 299.[5]

Here, the State had a significant need for Bouldin's testimony because the testimony concerned not just a threat to Bouldin but a confession to the shooting, which Hopkins-McGee denied doing. The evidence that Hopkins-McGee was conscious of his guilt tended to show that he was in fact responsible for the shooting. *See Lofton v. State*, No. 05-10-01265-CR, 2011 WL 6225415, at *12 (Tex. App.—Dallas Dec. 9, 2011, pet. ref'd) (holding evidence that defendant threatened victim tended to consciousness of guilt and occurrence of alleged abusive conduct against the victim). We conclude that the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.

Because Bouldin's testimony related to Hopkins-McGee's threats against her was admissible under either Rule 404(b) or Rule 403, the trial court would not have erred by overruling an objection on those grounds, even if trial counsel had made

---

[5] *See also Lofton v. State*, No. 05-10-01265-CR, 2011 WL 6225415, at *12 (Tex. App.—Dallas Dec. 9, 2011, pet. ref'd) (holding evidence of defendant's post-arrest conduct, including threatening witnesses, was probative of defendant's consciousness of guilt and tended to show alleged abusive conduct against witness occurred and therefore evidence's probative value was not substantially outweighed by danger of unfair prejudice, confusing issues, or misleading jury under Rule 403); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (characterizing consciousness-of-guilt evidence as one of strongest types of evidence of guilt).

11

one. *See Vaughn*, 931 S.W.2d at 566. Accordingly, trial counsel was not ineffective for failing to object to Bouldin's testimony. *Id.*[6]

### 2. Failure to object to crime scene photographs

Hopkins-McGee next argues that his trial counsel was ineffective for failing to object to inflammatory photographs of the crime scene. Specifically, Hopkins-McGee contends that his trial counsel should have objected to State's Exhibits 9-12, 15-16, 18-19, 21-22, which showed Darren Young covered in a white sheet at the crime scene, and State's Exhibits 30-44 and 46-50, which depicted Young's uncovered body in relation to other evidence found at the scene and close ups of his wounds.

These color photographs accompanied the testimony of a crime scene investigator who took them "to document the scene as it is before collecting the evidence so it can show the evidence in the scene." Hopkins-McGee contends these photographs were "surreal," "haunting," "gruesome," "disturbing," and "entirely unnecessary" and that his trial counsel should have objected under Rule 403. Hopkins-McGee describes State's Exhibit 47 as "particularly disturbing" because it

---

[6] *See Agbogwe v. State*, 414 S.W.3d 820, 835 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that evidence that defendant requested complainant drop charges, ignore her subpoena, and offered to pay fines for complainant's noncompliance with subpoena was substantively admissible as evidence of consciousness of guilt and, thus, defense counsel's failure to object was not ineffective assistance of counsel).

shows Young's body after having been "flipped over" by the medical examiner and depicts his hands covered in paper bags, while his head "lolls backward."

For the reasons detailed below, and in the face of this silent record, we conclude that trial counsel's failure to object was not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. As noted above, Rule 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. TEX. R. EVID. 403.

In determining the prejudicial effect of photographs, a court should consider (1) the number of photographs, (2) the size of the photographs, (3) whether the photographs are in color or black and white, (4) the detail shown in the photographs, (5) whether the photographs are gruesome, (6) whether a body shown in the photographs is naked or clothed, and (7) whether the photographed body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment. *See Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000). Additionally, we note that crime scene photographs are almost always relevant because they "depict the reality of [the] offense" and may show the manner of its occurrence. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999).

Here, State's Exhibits 9-12, 15-16, 18-19, 21-22 showed Young's body covered in a white sheet at the crime scene and depicted his body in relation to the other evidence, such as cartridge casings and Young's sandal, found at the scene. State's Exhibits 30-44 and 46-50 depicted Young's uncovered, fully-clothed body in relation to other evidence found at the scene, including evidence discovered only after the white sheet was removed, as well as close ups of his wounds and clothing depicting bullet holes.

These photographs were in color, but none were particularly bloody. Though the briefs do not address the size of the photographs, the record reflects that they were handed to the jury and not illustrated on the courtroom projector.

Hopkins-McGee does not allege any alteration or attempt by the State to enhance the gruesomeness of the photographs. The photographs depict nothing outside of what was included in the crime scene investigator's testimony. Indeed, Hopkins-McGee's primary argument is that because the photographs were cumulative of autopsy photographs that were admitted into evidence and communicated uncontested information (that Young died from gunshot wounds and the location of the shooting), their probative value was insignificant compared to their inflammatory nature.

In *Chamberlain*, the Texas Court of Criminal Appeals rejected the premise that the photographs at issue—which showed close ups of bullet wounds suffered by

14

the complainant and included a close-up of the complainant's face with brain matter extruded through a large wound on the side of the head—accompanying the testimony describing the complainant's wounds in that case were cumulative, or of insignificant probative value. 998 S.W.2d at 236–37. The *Chamberlain* Court explained that "[v]isual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Id.* at 237. Although it concluded the photographs were "gruesome in that they depict[ed] disagreeable realities," the Court reasoned that the photographs depicted "nothing more than the reality of the brutal crime committed." *Id.*[7]

Here, as in *Chamberlain*, we conclude that State's Exhibits 9-12, 15-16, 18-19, 21-22, 30-44 and 46-50 are probative of the crime scene and the injuries sustained by Young. *See* 998 S.W.2d at 236–37. These photographs are no more gruesome than would be expected, given the nature of the injuries inflicted—seven gunshot wounds to Young's back, buttocks, and legs. *See id.* The fact that Young's body was "flipped over" in one photograph to assess his injuries did not render the photographs inadmissible. *See George v. State*, 446 S.W.3d 490, 506 (Tex. App.—

---

[7] *See also Sonnier v. State*, 913 S.W.3d 511, 519 (Tex. Crim. App. 1995) ("But when the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome.").

Houston [1st Dist.] 2014, pet. ref'd) (concluding that exhibit depicted brain matter having exited through wound to complainant's head was not inadmissible simply because it showed that complainant's body was rolled over at scene to assess his injuries). And the photographs here are significantly less gruesome than those deemed admissible in by the Texas Court of Criminal Appeals *Chamberlin* and this Court in *George*—in both cases, the photographs depicted detailed images of the multiple gunshot wounds to the complainants' heads, as well as brain matter extruding from those wounds. *See Chamberlin*, 998 S.W.2d at 236–37; *George*, 446 S.W.3d 506.

We conclude that the danger of unfair prejudice did not substantially outweigh the probative value of the photographs. *See* TEX. R. EVID. 403. The trial court would not have committed error in overruling an objection, even if trial counsel had made one. *See Vaughn*, 931 S.W.2d at 566. Therefore, trial counsel was not ineffective for failing to object to these photographs. *Id.*

### 3. Failure to object to photographs of Hopkins-McGee holding a firearm

Hopkins-McGee next argues that his trial counsel was ineffective for failing to object to photographs showing Hopkins-McGee holding a firearm, which were taken from his cell phone. Specifically, Hopkins-McGee contends that his trial counsel should have objected to State's Exhibits 77 and 78, photographs taken two weeks before the shooting, which show Hopkins-McGee standing shirtless,

16

smoking, wearing a blue baseball cap, and holding a pistol; State's Exhibits 79, 80, and 86, also taken two weeks before the shooting, which show Hopkins-McGee wearing a blue baseball cap, red sweatshirt, and holding a pistol; and State's Exhibits 83 and 84, taken one day before the shooting, which show Hopkins-McGee with two firearms on his lap and holding money.

Hopkins-McGee contends these photographs were "shocking" and had no relevance since the firearms in the photographs could not be tied to the offense. *See* TEX. R. EVID. 401, 402. Further, he argues that even if they had some probative value, the photographs were "outrageously prejudicial" and should have been excluded under Rule 403. Finally, Hopkins-McGee contends that the admission of this evidence allowed for evidence of an extraneous offense to be presented to the jury in violation of Rule 404(b). *See* TEX. R. EVID. 404(b) (evidence of crime, wrong, or other act is not admissible to prove person's character but may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, *identity*, absence of mistake, or lack of accident) (emphasis added).

In support of his argument, Hopkins-McGee relies on *Cunningham v. State*, 500 S.W.2d 820, 824 (Tex. Crim. App. 1973), and *Moreno v. State*, No. 01-04-00067-CR, 2005 WL 1910809, at *4 (Tex. App.—Houston [1st Dist.] Aug. 11, 2005) (not designated for publication). In *Cunningham*, the trial court admitted into evidence a sawed-off shotgun that was recovered from the trunk of a

car after the defendant was arrested for robbery. 500 S.W.2d at 822. Because the record showed the shotgun was not used in the robbery—the testimony established that a pistol, not a shotgun, was used during the robbery—the Court held that the shotgun had no relevance to any issue in the case and the trial court abused its discretion by admitting it into evidence. *Id.* at 824.

Similarly, in *Moreno*, this Court held that the trial court erred by admitting into evidence a black BB gun that was discovered in the defendant's truck because the only eyewitness testified that one of her assailants "held a little silver gun to her head, [and] she never mentioned seeing a black BB gun." 2005 WL 1910809, at *4. This Court concluded "the presence of such weapon continuously before the jury would only inflame their minds and encourage juror speculation and conjecture as to its use in past criminal activities." *Id.* We find these cases distinguishable.

In contrast to the weapons in *Cunningham* and *Moreno*, which had no similarity or connection to the weapon used in the offense, the record in this case reflects that the firearms that can be seen in these exhibits are relevant, as they are semiautomatic pistols—the same type of firearm used in the murder. TEX. R. EVID. 401. Although there was no evidence that it was a crime for Hopkins-McGee to carry a handgun, these photographs could be evidence of other "acts." *See* TEX. R. EVID. 404(b)(1). This evidence tended to establish Hopkins-McGee's identity as the shooter, as part of the State's identity evidence was these photographs depicting

18

Hopkins-McGee with a handgun similar to the one used in the shooting. *See* TEX. R. EVID. 404(b)(2).[8]

In addition, the State presented Exhibits 77-80 and 86 because they depicted Hopkins-McGee in clothing (red shoes, red hoodie, and blue baseball cap) similar to that seen on the suspected shooter in the surveillance video and described by witnesses. And the State presented Exhibits 83 and 84, taken one day before the shooting, because they depicted Hopkins-McGee with two handguns, as described by Bouldin. This evidence too was relevant to establish McGee's identity as the shooter. Accordingly, we conclude that these exhibits would have been admissible under Rules 401 and 404(b). *See* TEX. R. EVID. 401, 404(b).

We likewise conclude that the probative value of these exhibits was not substantially outweighed by unfair prejudice because there was no evidence to indicate that Hopkins-McGee's previous possession of the handguns was unlawful. *See Page v. State*, 125 S.W.3d 640, 650 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding testimony that defendant was known to carry black handgun was not necessarily prejudicial because previous handgun possession was not shown to be unlawful and, thus, was admissible under Rule 403).

---

[8]     *See also Page v. State*, 125 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that witness's testimony that defendant was known to carry black handgun was admissible under Rule 404(b) because "part of the State's identity evidence was [the] testimony that appellant carried a handgun that matched the description of the handgun used in the robbery")

19

Accordingly, we hold that State's Exhibits 77-80, 83-84, and 86 were admissible and that the trial court would not have erred in overruling an objection to their admissibility. Therefore, trial counsel did not provide ineffective assistance by failing to object to it. *See Vaughn*, 931 S.W.2d at 566.

**4. Failure to object to photograph of Hopkins-McGee taken during his arrest**

Hopkins-McGee next argues that his counsel was ineffective for failing to object to State's Exhibit 69, which is a screenshot taken from Houston Police Department Officer J. Baker's body camera showing Hopkins-McGee standing on the stairs outside of an apartment, with his hands in the air, and two officers with their guns drawn. Hopkins-McGee contends that the admission of this photograph destroyed his presumption of innocence and was prejudicial and inflammatory. Without citation to any specific authority, he analogizes the admission of this photograph to a defendant's appearance in front of a jury in handcuffs, shackles, or jail clothing.

By failing to cite to any legal authority for this argument, Hopkins-McGee's briefing on this issue is arguably insufficient. *See* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellant waives issue on appeal if he does not adequately brief that issue by presenting supporting arguments and authorities). But

20

even if the issue was adequately briefed, we would still find that trial counsel was not ineffective for the reasons detailed below. In most circumstances, requiring a defendant to wear handcuffs or appear in jail clothing before the jury infringes upon his constitutional presumption of innocence.[9] Here, however, Hopkins-McGee did not appear before the jury in jail clothing or in handcuffs.

And we disagree that any effect on the jury from the brief suggestion (via the admission of a photograph) that Hopkins-McGee was arrested equates to the recurring impression created when a defendant appears throughout trial in handcuffs, shackles, or jail clothing. *See Hollis v. State*, 219 S.W.3d 446, 466 (Tex. App.—Austin 2007, no pet.) ("It is well established that a criminal defendant's rights to a fair trial and to be presumed innocent may be violated if he is forced to stand trial in jail clothing. The same violations do not necessarily arise, however, from the admission of the defendant's mug shot, even if it depicts him in jail clothing.") (citations omitted).[10]

---

[9] *See, e.g.*, *Randle v. State*, 826 S.W.2d 943, 944–45 (Tex. Crim. App. 1992) (holding that compelling defendant to stand trial in prison clothes, over timely objection, violates rights to fair trial and presumption of innocence); *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991) (stating defendant suffers infringement of constitutional presumption of innocence when jury sees him in handcuffs or shackles).

[10] *See also Bryant v. State*, 705 S.W.2d 745, 749 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (distinguishing photograph of defendant detained by two police officers next to their patrol car from cases involving defendants being tried in handcuffs and in jail clothing and holding photograph was admissible to aid in officer's testimony regarding defendant's appearance on day of arrest); *Ware v.*

21

As pointed out by the State, it would be unremarkable to the jury that Hopkins-McGee was arrested, particularly because Officer Baker's testimony described the circumstances of that arrest. *See Hutchinson v. State*, No. 01-98-01259-CR, 1999 WL 977836, at *1 (Tex. App.—Houston [1st Dist.] Oct. 28, 1999, pet. ref'd) (not designated for publication) ("Jurors should not have been surprised to learn that, at some time before trial, appellant had been jailed. Obviously, a defendant must be arrested and taken to jail to begin the felony criminal litigation process.").

Moreover, the photograph was introduced to show Hopkins-McGee's appearance on the day of his arrest. In fact, the entire discussion of State's Exhibit 69 centered around the fact that Hopkins-McGee was wearing red shoes on the day of the arrest—shoes that were similar in appearance to the shoes worn by the shooter in the surveillance video. Photographs that reflect a defendant's appearance on the date of arrest or offense are admissible and "do[ ] not rise to a level of a violation of appellant's constitutional right to be presumed innocent." *Neelys v. State*, 374 S.W.3d 553, 564 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (holding

*State*, 628 S.W.2d 249, 251 (Tex. App.—Fort Worth 1982, pet. ref'd) (recognizing that although prison garb cases are predicated on infringement of accused's right to be presumed innocent, "[w]e are not prepared to go so far as to hold that the admission of a photograph, at least in this case, rises to the same level of constitutional infringement as the trying of an accused in his jail clothing. The continuous presence of an accused in jail clothing 'speaks' against the accused much louder than does the admission of a single 'mug shot'").

photograph depicting defendant's handcuffed hand and arm, as well as wounds on defendant's knuckles, hand, and arm, was admissible because it reflected defendant's appearance on day of offense and testimony concerning photograph related to defendant's injuries and not fact that he was handcuffed).[11]

For the above reasons, we hold that State's Exhibit 69 was admissible and the trial court would not have erred in overruling an objection, even if trial counsel had made one. Therefore, trial counsel did not provide ineffective assistance by failing to object to it. *See Vaughn*, 931 S.W.2d at 566.

Because we have found that trial counsel's performance during the guilt/innocence phase of trial was not deficient, based on the record before us, the challenged conduct of Hopkins-McGee's trial counsel was not error. Accordingly, there is no basis for Hopkins-McGee's additional argument that he received ineffective assistance based on the cumulative errors of his trial counsel.

We overrule Hopkins-McGee's first issue.

## C.    Ineffective Assistance During the Punishment Phase

In his fourth issue, Hopkins-McGee claims that his trial counsel was ineffective for failing to object to the admission of rap lyrics taken from what was

---

[11]    *See also Davis v. State*, 786 S.W.2d 77, 78 (Tex. App.—Beaumont 1990, pet. ref'd) (concluding that mug shot of defendant depicting him in custody with a "Jefferson County Sherriff's Department" sign and inmate number was admissible to accurately depict the defendant's appearance at the time of the arrest few days after charged offense occurred).

23

purported to be his cell phone. In particular, Hopkins-McGee contends that trial counsel should have objected to State's Exhibits 128-132, under Texas Rule of Evidence 901,[12] on the basis that they were not properly authenticated and, under Texas Rule of Evidence 702,[13] because Detective J. Young was not qualified as a "expert in rap music."

### 1. Authentication

Hopkins-McGee argues that trial counsel should have objected that State's Exhibits 128-132 were not properly authenticated under Rule 901 because the State did not show that the rap lyrics recovered from the phone were authored by Hopkins-McGee. Hopkins-McGee asserts that his only connection with these rap lyrics is that they were "found on a phone which the State believes belongs to him."

As a condition precedent to the admission of evidence, the proponent of the evidence must satisfy the requirement of authentication by showing that the item "is what the proponent claims." TEX. R. EVID. 901(a). The question of authentication arises when the relevance of proffered evidence "depends upon its identity, source,

---

[12]     Rule 901 provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a).

[13]     Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

or connection with a particular person, place, thing or event." *Jones v. State*, 466 S.W.3d 252, 261–62 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (internal quotations omitted).

In performing its "gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Id.*; *see Jones*, 466 S.W.3d at 262 (noting that authentication may be shown by circumstantial evidence). Authenticity need not be proven beyond a reasonable doubt, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity. *Jones*, 466 S.W.3d at 262.

Here, the State presented evidence that Exhibits 128-132 were taken from a data extraction performed on Hopkins-McGee's cell phone. An extraction report generated from the "phone dump" indicated that the owner's name was listed as "Antonio's iPhone," the Apple ID associated with the phone was listed as

c****17@icloud.com, and the phone number associated with the phone was 713-2**-1**1, which was Hopkins-McGee's cell phone number. The cell phone also contained numerous photographs of Hopkins-McGee taken between November 2017 and April 2018 and text message conversations between Hopkins-McGee and his grandmother and Hopkins-McGee and his girlfriend.

In addition, the lyrics contained information specific to Hopkins-McGee. For example, State's Exhibit 128 contains the lyrics: "I was down bad in Chicago had to get out, too a trip to Houston . . . pops in Harris county calling telling me to chillat." Hopkins-McGee's father, Antonio McGee, testified that he moved his son from Chicago down to Houston "to get him away from the violence that was going on in the City of Chicago." His father also testified that he was incarcerated in the Harris County jail at the time of the murder.

State's Exhibit 129 contains the lyrics: "On the run losing weight I ain't have s**t on my plate all my brothas turned to snakes they was talkin to the jakes 12 got a picture of me I knew they was lookin fa me." Detective Young testified that at the time this lyric was written, Hopkins-McGee was a known suspect, and police had interviewed known associates and friends of Hopkins-McGee in connection with this investigation. He also testified that a news station had Hopkins-McGee's picture, so he believed Hopkins-McGee "knew the police were looking for him."

We conclude that this evidence, taken together, was sufficient to establish that the cell phone and its contents, including the rap lyrics contained in State's Exhibits 128-132, belonged to and were within the control of Hopkins-McGee and, thus, were sufficiently authenticated.[14]  Because these exhibits were sufficiently authenticated, the trial court would not have erred in overruling an objection, even if trial counsel had made one.  Therefore, trial counsel did not provide ineffective assistance by failing to object to it. *See Vaughn*, 931 S.W.2d at 566.

### 2. Expert Testimony

Hopkins-McGee further argues that trial counsel should have objected to State's Exhibits 128-132 under Rule 702 because Detective Young, through whom these exhibits were introduced, was not qualified as an expert in rap music.

However, Hopkins-McGee does not point to any specific testimony by Detective Young that was expert testimony.  As the State points out, with respect to

---

[14]    *See Jones v. State*, 466 S.W.3d 252, 262–63 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding cell phone and contents were sufficiently authenticated by evidence that defendant used and possessed phone, identification of phone numbers in phone suggesting that it was used to communicate with defendant's family members and friends, but not with defendant himself, photographs of defendant, photographs showing shipping label addressed to defendant at restaurant where he worked, and text messages regarding bank transactions consistent with bank receipts found in car defendant was driving); *see also Tienda v. State*, 358 S.W.3d 633, 645 (Tex. Crim. App. 2012) (holding evidence was sufficient to authenticate social media page as belonging to and maintained by defendant because page contained his nicknames, email addresses associated with him, numerous photographs of defendant's unique tattoos, and specific information about charged offense and co-conspirators).

State's Exhibits 130-132, Detective Young merely testified as to the exhibit date and whether that date was before or after Hopkins-McGee's arrest, and then proceeded to read the content of the exhibit—testimony that is not expert opinion testimony. *See* TEX. R. EVID. 702 (addressing "scientific, technical, or other specialized knowledge"). Hopkins-McGee does not cite to any authority demonstrating how this testimony was improper or that any such Rule 702 objection to Detective Young's testimony would have been successful.[15] As we noted above, an appellant's failure to include "appropriate citations to authorities and to the record" waives that issue on appeal. TEX. R. APP. P. 38.1(i); *Cardenas*, 30 S.W.3d at 393.

Even if we consider this issue to have been sufficiently briefed, Hopkins-McGee has failed to overcome the presumption that his trial counsel rendered reasonable professional assistance because, as with his other ineffective assistance points, the record contains no explanation for counsel's failure to object to Detective Young's testimony relating to these exhibits. To conclude that counsel was ineffective for failing to object under Rule 702 to Detective Young's testimony

---

[15] *See Cavitt v. State*, 507 S.W.3d 235, 256 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding defendant failed to carry burden to show counsel was ineffective for failing to object to expert testimony because defendant did not explain what rendered witness's testimony inadmissible under Rule 702, nor did he cite to any authority demonstrating that this testimony was improper and that any such Rule 702 objection to testimony would have been successful).

would therefore call for speculation, which we will not do. *See Jackson*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

In the face of the silent record, we hold Hopkins-McGee has failed to carry his burden to show that counsel was ineffective for failing to object to Detective Young's testimony or that the trial court would have committed error in overruling the objection, even if one had been made. *See Vaughn*, 931 S.W.2d at 566; *Cavitt*, 507 S.W.3d at 256.

We overrule Hopkins-McGee's fourth issue.

## Evidentiary Challenges

In his second and third issues, Hopkins-McGee argues that the trial court abused its discretion by admitting certain evidence. Specifically, Hopkins-McGee contends the trial court erred by admitting State's Exhibit 91, two text messages taken from his cell phone, under Texas Rule of Evidence 403, and State's Exhibit 90, rap lyrics taken from his cell phone, under Texas Rules of Evidence 403 and 901.

### A. Standard of Review

We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

29

**B.     Admissibility of Text Messages**

State's Exhibit 91 contained text messages between Hopkins-McGee and his girlfriend in which Hopkins-McGee wrote: "Don't even say nothing to him cause ion wanna have to put another n\*\*\*a on the news."  Hopkins-McGee, citing to the six-factor balancing test for admission of evidence under Rule 403, argues that the trial court erred by admitting the exhibit during the guilt/innocence phase of trial over his objection that it was "more prejudicial than probative." *See* TEX. R. EVID. 403.  The State responds that Hopkins-McGee failed to preserve the majority of his Rule 403 objection and, even if he had, the trial court did not reversibly err by admitting the exhibit under Rule 403 in light of the substantial evidence of guilt.

We agree with the State.  Assuming Hopkins-McGee preserved his Rule 403 objection and that the trial court erred by admitting State's Exhibit 91—questions we do not decide—any error in the admission of this evidence was harmless.

In a criminal case, the erroneous admission of evidence is non-constitutional error. TEX. R. APP. P. 44.2(b).  Under Rule 44.2(b), any such error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. *Id*; *see Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A substantial right is not affected, and error will be deemed harmless, if, after reviewing the entire record, the appellate court determines that the error did not influence, or had only a slight

30

influence, on the trial outcome. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable. *Id.* at 355–56. Whether the State emphasized the error also can be a factor. *Id.* at 356.

Here, Mitchell testified that he heard gunshots and saw an individual wearing red clothing and a ball cap leaving the pool area immediately after the shooting. Bouldin testified that she too heard the gunshots and that Hopkins-McGee came to her apartment immediately after the shooting. He confessed to her that he had just shot someone, she saw he had two guns in his possession, and he threatened that she would be next if she talked to the police.

Bouldin also recalled that Hopkins-McGee was wearing a red hoodie on the day of the shooting. Police recovered surveillance footage of the suspected shooter, which showed him wearing a red hoodie, blue ball cap, black backpack, gray sweats and red shoes. Photographs taken from Hopkins-McGee's cell phone, from both

before and after the murder, show him dressed in clothing consistent with the appearance of the shooter on the surveillance footage. Also on the cell phone, police found a screen capture of a news article describing Young's murder. The screen capture was dated November 22, 2017, one day after the murder and before police had spoken to Hopkins-McGee about the murder.

In addition, Hopkins-McGee's defense focused on his alibi—that he was in Chicago at the time of the murder and could not have done it. The State, however, presented conflicting evidence in the form of cell phone records and text messages indicating that Hopkins-McGee was near 9898 Forum Park Dr., a Harris County address, during the time of the murder on November 21, 2017; in the Houston area until November 23 (Thanksgiving); and did not arrive in Chicago until the day after Thanksgiving.

Finally, although Hopkins-McGee contends that the State emphasized State's Exhibit 91 during closing argument, the record shows that the State made only a single reference to the exhibit during closing argument, stating: "[A] month later he's talking to his girlfriend about putting someone else on the news."

Considering all the above evidence, we conclude that any alleged error in the admission of State's Exhibit 91 did not influence the jury or had only a slight effect and was, therefore, harmless. *See* TEX. R. APP. P. 44.2(b); *Motilla*, 78 S.W.3d at 360.

We overrule Hopkins-McGee's second issue.

**C.    Admissibility of Rap Lyrics**

Hopkins-McGee next contends the trial court erred by admitting State's Exhibit 90 during the punishment phase of trial.  State's Exhibit 90 contained the following rap lyrics, which were typed into the notes section of Hopkins-McGee's cell phone:

> Same block different glock 223 without the stock couple n***s movin funny u ain't wit me u a opp they was hatin, hatin cause I'm making all this f**kin paper I ain't got no time to talk B***h u can get up wit me later chasing cash getting in my bag why u n***s mad

> Make me spazz walk up wit no mask put u on Yo a*s try to run I'll f**ck yo back won't give u a pass then act dumb show up to the scene and be like who died?  Ion rap I be in the trap tryna flip a pack this a race y'all in last place u n***s wack that's a fact light come from my wrist like a new patek use yo b***h then I give her back I just want her check cop a pound but I bust it down sell it by the gram smoke a wood just to calm me down even though it's loud f**k a crowd all I need is me put u on a tee live on abc n***a u ain't G enough to beef

During the punishment phase, the State sought to introduce State's Exhibit 90 and acknowledged that Hopkins-McGee had objected to the exhibit during the guilt/innocence phase and was "still objecting to [it]."  The trial court explained that for the purposes of guilt or innocence, it had ruled that State's Exhibit 90 "was far too prejudicial than it is probative; but for punishment purposes, I find that it is [more] probative than it is prejudicial and I'm overruling your objections."

**1.    Authentication**

Hopkins-McGee first argues that the State failed to properly authenticate State's Exhibit 90, i.e., "to lessen the possibility that the lyrics were written by

33

someone else." According to Hopkins-McGee, because the exhibit was not properly authenticated, it was not relevant to any issues before the jury and the trial court abused its discretion by admitting the evidence.

However, as the State points out, Hopkins-McGee did not raise a Rule 901 objection in the trial court to the admission of State's Exhibit 90, nor did he obtain a ruling on that basis. To preserve error for appellate review, a party must timely object and state the grounds for the objection with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). A party must also demonstrate that the trial court either ruled or refused to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(2). The objection must be sufficiently clear to give the trial court and opposing counsel an opportunity to address the objection and, if necessary, correct the purported error. *Thomas*, 505 S.W.3d at 924.

If a trial objection does not comport with arguments on appeal, error has not been preserved. *Id.* Additionally, to preserve error in admitting evidence, a party must object and obtain a ruling each and every time the inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)

Hopkins-McGee points to the discussion in the trial court on the admissibility of State's Exhibit 90 during the guilt/innocence phase to contend that he objected to the authenticity of the exhibit. Hopkins-McGee stated in the trial court that "someone could have used his phone. There is no evidence he made that comment on his phone. It could have been somebody that he loaned the phone to." But, as noted above, this discussion occurred during the guilt/innocence phase—not during the punishment phase. The trial court excluded the evidence under Rule 403 but did not make any ruling on any authenticity objection under Rule 901.

When the State reoffered State's Exhibit 90 during the punishment phase, the only objection made by Hopkins-McGee, and the only ruling from the trial court, was under Rule 403. There was no discussion of authenticity and no ruling from the trial court on that basis. *See* TEX. R. APP. P. 33.1(a)(2); *Valle*, 109 S.W.3d at 509; *Chauncey v. State*, No. 14-13-00950-CR, 2015 WL 3982858, at *7 (Tex. App.— Houston [14th Dist.] June 30, 2015, pet. ref'd) (mem. op., not designated for publication) (holding defendant failed to preserve objection to evidence offered during punishment phase because, even though defendant objected to admission of same evidence during guilt/innocence phase, he did not re-urge objection when

evidence was offered during punishment). Accordingly, Hopkins-McGee has failed to preserve this argument for appeal.[16]

### 2. Probative Value

Hopkins-McGee next contends the trial court erred in admitting State's Exhibit 90 because it was more prejudicial than probative under Rule 403. Citing scholarly articles, Hopkins-McGee contends the "problem with admitting rap lyrics at trial is really a problem with who rap music is often used *against*. The admissibility of rap lyrics as evidence is often framed as a legal matter, but it is really about race."

Yet at the same time, Hopkins-McGee acknowledges he is not contending that the State was motivated by racism when utilizing the exhibit. In this regard, the Texas Court of Criminal Appeals has held that similar writings by a defendant were probative of the defendant's future dangerousness and, therefore, admissible under Rule 403. *Green v. State*, 934 S.W.2d 92, 103–04 (Tex. Crim. App. 1996).[17]

---

[16] Even if this argument was preserved for appeal, we have already concluded in our analysis of Hopkins-McGee's first issue that the exhibits taken from the "phone dump," which include State's Exhibit 90, were sufficiently authenticated.

[17] S*ee also* TEX. CODE CRIM. PROC. art. 37.07, §3(a)(1) ("[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried.").

In *Green*, the defendant argued that the trial court erred in admitting a letter written by the defendant while in jail to an accomplice, which appeared to reflect his "plan to avoid conviction by testifying that some other individuals wrongfully blamed him for the robberies they actually committed" and contained rap lyrics from a musical group: "I forever be a trigga happy n\*\*\*a." 934 S.W.2d at 103.

The defendant in *Green* made similar race-based arguments against the admissibility of the letter, arguing that the trial court should have excluded the letter because "its racially inflammatory nature was excessively prejudicial." *Id.* at 104. Likewise, an amicus brief filed on behalf of the defendant in *Green* argued that the "introduction of the letter permitted the prosecution to unjustifiably use appellant's race and youth to heighten racial prejudice, create fear, and reinforce stereotypes which characterize young African-American men as violent and prone to criminal behavior." *Id.*

The Court of Criminal Appeals rejected these arguments. *Id.* It noted that the State's argument did not focus on the defendant's race and youth, but rather on the defendant's "continuing threat to society as indicated by his description of himself as trigger happy, as well as his desire to dodge responsibility for the murder and to get back in 'the game.'" *Id.* Accordingly, the Court in *Green* concluded that the trial

court did not abuse its discretion by admitting the evidence because the evidence was probative of the defendant's future dangerousness. *Id.*[18]

Here, as acknowledged by Hopkins-McGee, the State's argument for admissibility did not focus on his race. Rather, the State argued that the exhibit should be introduced to show Hopkins-McGee's lack of remorse for the crime. The State argued that there were similarities between the lyrics and the circumstances surrounding the crime.

For instance, referencing the line "Make me spazz walk up wit no mask," Detective Young testified that Hopkins-McGee did not wear a mask during the murder. Referencing the line "put u on Yo a*s try to run I'll f**k yo back," Detective Young testified that Young fell to the ground after being shot in the back multiple times. Finally, referencing the line "live on abc," Detective Young testified that this murder was covered in the media.

Accordingly, based on his training and experience, Detective Young testified that he believed the references in State's Exhibit 90 were consistent with the facts of

---

[18] *See also Jimenez v. State*, No. 07-13-00061-CR, 2015 WL 75025, at *3 (Tex. App.—Amarillo Jan. 6, 2015, no pet.) (mem. op., not designated for publication) (holding that defendant's rap lyrics which described various acts of violence as well as other crimes were relevant evidence of his character and propensity for future violence and thus admissible under Rule 403); *Stewart v. State*, 995 S.W.2d 251, 256 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (trial court did not abuse its discretion in admitting lyrics in defendant's notebook that were of violent nature as character and reputation evidence at punishment stage).

this case. As the State points out, this evidence was not introduced to prove that Hopkins-McGee committed the murder, as that had already been determined by the jury. But rather, it was introduced to show that Hopkins-McGee was "proud of what he did" and was not "sorry for what he did to Darren Young."

We conclude this evidence was probative of Hopkins-McGee's lack of remorse for the crime. We also find, in accordance with *Green*, that the violent nature of the lyrics (e.g., "Make me spazz walk up wit no mask put u on Yo ass try to run I'll f**k yo back won't give u a pass then act dumb show up to the scene and be like who died?") were probative of Hopkins-McGee's future dangerousness. As such, the trial court did not abuse its discretion by allowing the admission of State's Exhibit 90 under Rule 403 during the punishment phase of trial. *Green*, 934 S.W.2d at 103–04.

We overrule Hopkins-McGee's third issue.

## Conclusion

Accordingly, based on the record and arguments presented to us, we affirm the trial court's judgment.

Terry Adams
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.

Do not publish. TEX. R. APP. P. 47.2(b).